Ruffin, C. J.
 

 The Court is of opinion, that the decree is erroneous, and that the bill ought to have been dismissed.
 

 It is to be remarked in the opening, that the bill is not framed with a view to satisfaction out of this fund, as the equitable property of the debtor. If it had been, there are two decisive objections to sustaining it. One, that it does not shew, that the debtor had no other property, out of which satisfaction could have been obtained upon a legal execution ; the other, that where the fund is equitable, so that an execution creates no lien on it at law, the debtor may assign, notwithstanding execution sued, until the judgment creditor ties his hands by filing a bill.
 
 Harrison
 
 v.
 
 Battle,
 
 1 Dev. Eq.
 
 537. McKay
 
 v.
 
 Williams,
 
 1 Dev. & Bat. Eq. 398.
 
 Kirkpatrick
 
 v.
 
 Means,
 
 decided at this term. The bill and the decree, however, do not proceed upon any such ground, but wholly on the idea, that this interest of Rouche in the house and lot is such a legal estate as was liable to be sold on execution, and that the Justice’s execution and the proceedings on it created a lien on the property. The cause therefore depends upon the correctness of that proposition.
 

 
 *258
 
 It is true, and was so held in
 
 Harrison
 
 v.
 
 Battle,
 
 and
 
 Pool
 
 v.
 
 Glover, 2
 
 Ired. 129, that the resulting trust, in such a case is substantially an equity of redemption within the meaning of the second section of the Act of 1812, and - therefore it might have been sold upon
 
 & fieri facias
 
 like any other lands or tenements of the debtor; and that writ binds it; or creates a lien on it, from the time of execution sued.
 
 Hall
 
 v.
 
 Harris
 
 3 Ired. Eq. 289. We agree likewise, that, when execution has been sued and a lien thereby created, the Court of equity as was said in
 
 Harrison
 
 v.
 
 Battle,
 
 and
 
 McKay
 
 v.
 
 Williams
 
 will entertain a bill asking itto exercise a jurisdiction, ancillary to the law, and enquire into the incumbrancy and clear the estate therefrom, or decree a sale under the direction of the Court, and out of the proceeds satisfy the prior encumbrance and then the demands of the execution creditors. For although the creditor may proceed, at once, to a sale under execution, because the statute gives him the power, yet it is most beneficial for all parties that the debtor’s real interest, the value of the equity of the redemption, may be ascertained by an enquiry into the amount and justice of the mortgage debts, and the estate brought to sale with a clear title. The whole question in the case is, then, whether the plaintiff before their bill filed had obtained a lien, in a just and legal sense by their executions. If they had, they would undoubtedly have been entitled to a decree to have a sale of thq. premises for their satisfaction; and, if they had not such a lien, they could not have hada decree for a sale, and, of course, cannot have one for satisfaction out of its produce. It is a question, indeed, whether the lien, supposing it to have been created by executions and levies, would Subsist after the sale of the whole property by the trustees; and, if so, whether it does not continue on the property itself and against the purchaser at the trustee’s sale, rather than on the proceeds of that sale. But with none of those points are we disposed to meddle now, because we are of opin
 
 *259
 
 ion, that, supposing the plaintiffs to have in this Court the same rights against the money in the hands of the trustee, which they had against the equity of redemption in the house itself, they cannot have any relief, because we hold, that, the plaintiffs never had a lien on the property itself or the equity of redemption, and therefore can have no right to call for the proceeds of tlie sales, whether such proceeds be deemed the subject of either the legal or equitable demand of the maker of the deed. The term, lien, when used in reference to an execution, expresses the right of the creditor to obtain payment by force of that process by a sale of the debtor’s property, so as to divest the property out of the debtor or his alienee. It may not only be created
 
 in presentí
 
 by suing the process, but it may by relation be carried back to a prior time, as from the teste or from the judgment. Rut to create the lien and enforce it, it is indispensable that there should be effectual process such as will enable the creditor to make a sale of the property. That is always the case with a
 
 fieri facias
 
 duly issued from a Court of record. But it is not so with respect to that process, when issued by a justice of the peace. It only binds personal property from the time of the levy, and, in respect to land, it does not bind it at all, in the sense of enabling the creditor to have a sale under it. The statute directs, that a justice of the peace shall not issue an execution immediately against land; but that it shall command tho officer to make the money of the goods and chattels of the party cast, and, for want of goods and chattels to levy
 
 on the
 
 lands and tenements. It further requires the officer to make return thereof, setting forth the money he has made of the goods, and what land he has levied on, and enacts, that, upon such return, the land levied on shall by order of the County Court be sold by the sheriff, as on a
 
 venditioni exponas.
 
 When the order of sale is made in the County Court, and is acted on by the plaintiff by duly suing execution thereof, it has been held that the lien has relation to tho
 
 *260
 
 levy by the constable, determining the preference between other execution creditors, whether they obtained judgments in or out of court.
 
 Lash v. Gibson,
 
 1 Murp. 266,
 
 Huggins
 
 v.
 
 Ketchum,
 
 4 Dev. and Bat. 415, We doubt not, that it has the like relation in restraint of the debtor’s' own alienation. But it would seem, that there can be no relation for any purpose, nor any lien created by the execution of the justices merely, unless the party complete it by obtaining on it an order of the Court to-sell, and taking execution ou the order, for until that be done, it cannot be known, that it ever will bé done, or that it could be done. The debt may have been discharged, or it may be that the County Courts may find such defects in the process or the return as will prevent the making of an order to sell. Until the order to sell and execution thereon, there is not such final process as will authorize the' party to sell or create an effectual lien. But this case does not require even a rule to that extent to be laid down, because the plaintiff’s have not only not issued nor obtained an award of execution, but it is clear, that, upon the returns of the constable they never can rightly obtain such order or process. For the return states a levy on certain personal property, and does not shew any disposition of that, nor shew that there is no other personal property, and on such a return the Court ought not to make an order of sale, and, it is to be presumed, would not.
 
 Borden
 
 v.
 
 Smith, 3
 
 Dev. and Bat. 34,
 
 Henshaw
 
 v.
 
 Branson,
 
 3 Ired. 298. It neither appears by the return, nor even in the bill, that the debtor’s goods would not pay the debt: and therefore the plaintiffs do not entitle themselves to execution against the realty, much less shew such on one as would authorize a sale. Consequently, they came here prematurely, at all events, ’ and the decree must be reversed and the bill dismissed, with costs in both Courts.
 

 Per Curiam.
 

 Judgment reversed and
 
 venire de
 
 novo.